UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO.: 6:26-cv-1853

SHEILA MIRANDA,

Plaintiff,

v.

CVS ORLANDO FL DISTRIBUTION, L.L.C.
d/b/a CVS Caremark Distribution Center,

Defendant.

_______________________________________/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Sheila Miranda ("Plaintiff"), by and through undersigned counsel, files this Complaint against Defendant CVS ORLANDO FL DISTRIBUTION, L.L.C. d/b/a CVS Caremark Distribution Center ("Defendant" or "CVS"), and alleges as follows:

I. JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 because this action arises under 42 U.S.C. § 1981.

2. Venue is proper in this District and Division pursuant to 28 U.S.C. § 1391(b) because the unlawful employment practices alleged herein were committed in Orange County, Florida, within the Middle District of Florida, Orlando Division, and Defendant maintains a place of business in this District.

## II. PARTIES

3. Plaintiff Sheila Miranda is an individual and resident of Polk County, Florida. At all times relevant to this Complaint, Plaintiff was employed by Defendant. Plaintiff is dark-skinned.

4. Defendant CVS ORLANDO FL DISTRIBUTION, L.L.C. is a Delaware corporation that does business in the State of Florida, including through its CVS Caremark Distribution Center located at 8201 Chancellor Drive, Orlando, Florida 32809. Defendant is an employer that contracted with Plaintiff for her labor and services.

5. At all times relevant hereto, Defendant acted by and through its agents, servants, and employees, including Manager Arturo Diaz, who were acting within the course and scope of their employment.

## III. FACTUAL ALLEGATIONS

6. Plaintiff is a dark-skinned female. The other Puerto Rican co-workers involved in the events described below are also dark-skinned. Manager Arturo Diaz and the Colombian co-workers who received preferential treatment are light-skinned.

7. Plaintiff began her employment with Defendant on or about April 6, 2022, as an Inventory Control associate at Defendant's distribution center located at 8201 Chancellor Drive, Orlando, Florida 32809. Plaintiff's rate of pay was $19.05 per hour.

8. From the commencement of her employment until in or about mid-2024, Plaintiff performed her job duties satisfactorily and without any disciplinary warnings or performance issues.

9. In or about 2024, Arturo Diaz, who is light-skinned, became Plaintiff's manager.

10. Within a couple of months after Mr. Diaz's arrival, he began subjecting dark-skinned employees, including Plaintiff and other dark-skinned Puerto Rican employees, to discriminatory treatment while giving preferential treatment to light-skinned employees, including light-skinned Colombian and Venezuelan employees. The preferential treatment included assignment to better positions and higher pay.

11. Mr. Diaz routinely spoke to dark-skinned employees, including Plaintiff, in a demeaning and vulgar manner. Among other things, Mr. Diaz stated: "you people are always causing problems," "you people are always missing mistakes," and "I am tired of you people."

12. Mr. Diaz also began issuing Plaintiff unfounded disciplinary warnings.

13. In or about November 2024, following a workplace issue for which Mr. Diaz blamed Plaintiff, Plaintiff provided her account of the events and expressly asked Mr. Diaz to stop discriminating against her and other dark-skinned employees. Plaintiff had made similar requests to cease his disrespectful and discriminatory conduct on multiple prior occasions. Between January and May

2025, Plaintiff again asked Manager Arturo Diaz on multiple occasions to stop discriminating against dark-skinned employees, including herself.

14. On or about May 23, 2025, while at work, Plaintiff was drinking coffee together with five other co-workers: Isette Calderon (dark-skinned), Solimar Cruz (dark-skinned), Nori Sanchez (dark-skinned), Ramon (last name unknown, light-skinned), and Yurani Sanchez (light-skinned).

15. Drinking coffee every morning was a long-standing, routine practice in the department that had been engaged in daily for years by co-workers, supervisors, and managers without prior discipline or incident.

16. Plaintiff was called to Human Resources, where Manager Arturo Diaz informed her that she was being terminated because she was drinking coffee. The three other dark-skinned co-workers present were reprimanded. The two light-skinned co-workers received no warning, reprimand, or any form of discipline whatsoever for engaging in the identical conduct.

17. Plaintiff's termination became effective on or about May 23, 2025 (or May 27, 2025 according to the termination letter).

18. The stated reason for Plaintiff's termination (drinking coffee) was a pretext for unlawful discrimination based on Plaintiff's race and dark skin color. This is evidenced by the clear disparate treatment of similarly situated light-skinned employees who engaged in precisely the same routine conduct without any adverse consequences, as well as by Mr. Diaz's pattern of demeaning

comments directed at dark-skinned employees, preferential treatment of light-skinned employees, and unfounded warnings.

19. As a direct and proximate result of Defendant's unlawful race and color discrimination, harassment, and retaliation, Plaintiff has suffered damages including lost wages and benefits, diminished earning capacity, emotional distress, humiliation, loss of professional reputation, and other compensatory harm.

**COUNT I**
**Race and Color Discrimination in Violation of 42 U.S.C. § 1981**

20. Plaintiff realleges and incorporates by reference paragraphs 1 through 19 as if fully set forth herein.

21. Section 1981 of Title 42 of the United States Code prohibits racial discrimination in the making, performance, modification, and termination of contracts, including employment contracts, and guarantees to all persons the same right to make and enforce contracts as is enjoyed by white citizens.

22. Plaintiff is a member of a protected class based on her race and color (dark-skinned).

23. Plaintiff was qualified for her position and performed her job duties satisfactorily.

24. Defendant, through its manager Arturo Diaz and others, intentionally subjected Plaintiff to disparate treatment and terminated her employment because of her race and dark skin color.

25. Defendant treated similarly situated light-skinned employees more favorably than Plaintiff and other dark-skinned employees with respect to work assignments, pay, discipline, and termination.

26. Defendant's stated reason for terminating Plaintiff was pretextual. The true motivating factor for the adverse employment action was Plaintiff's race and color.

27. As a direct and proximate result of Defendant's intentional discrimination, Plaintiff has suffered and continues to suffer damages, including but not limited to lost wages and benefits, emotional distress, humiliation, and other compensatory damages.

28. Defendant's actions were willful, malicious, and in reckless disregard of Plaintiff's rights, entitling Plaintiff to punitive damages.

## COUNT II
**Hostile Work Environment Based on Race and Color**
**in Violation of 42 U.S.C. § 1981**

29. Plaintiff realleges and incorporates by reference paragraphs 1 through 19 as if fully set forth herein.

30. Defendant, through its manager Arturo Diaz, subjected Plaintiff to a hostile work environment based on her race and dark skin color. The harassment included repeated demeaning comments referring to dark-skinned employees as "you people," unfounded discipline, and differential treatment favoring light-skinned employees, which was severe or pervasive enough to alter the terms and conditions of Plaintiff's employment and create an abusive working environment.

31. The hostile work environment was based on Plaintiff's race and color, and Plaintiff perceived the environment as hostile and abusive.

32. Defendant knew or should have known of the harassment and failed to take prompt and appropriate corrective action.

33. As a direct and proximate result of the hostile work environment, Plaintiff suffered damages as alleged herein.

COUNT III Retaliation in Violation of 42 U.S.C. § 1981

34. Plaintiff realleges and incorporates by reference paragraphs 1 through 19 as if fully set forth herein.

35. Section 1981 prohibits retaliation against an individual for opposing racial discrimination or for engaging in protected activity under § 1981.

36. Plaintiff engaged in protected activity when she complained to Manager Arturo Diaz, on multiple occasions including in or about November 2024 and continuing between January and May 2025, that he was discriminating against

her and other dark-skinned employees on the basis of race and color and expressly asked him to stop such discrimination.

37. Defendant, through its managers and agents including Arturo Diaz, was aware of Plaintiff's protected complaints.

38. Thereafter, and in close temporal proximity to Plaintiff's continued complaints between January and May 2025, Defendant subjected Plaintiff to adverse employment actions, including continued unfounded discipline and, ultimately, termination of her employment on or about May 23, 2025.

39. Plaintiff's protected activity was a motivating factor in Defendant's decision to terminate her employment and to take other adverse actions against her.

40. As a direct and proximate result of Defendant's unlawful retaliation, Plaintiff has suffered and continues to suffer damages, including but not limited to lost wages and benefits, emotional distress, humiliation, and other compensatory damages.

41. Defendant's retaliatory actions were willful, malicious, and in reckless disregard of Plaintiff's rights, entitling Plaintiff to punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Sheila Miranda respectfully requests that this Court enter judgment in her favor and against Defendant and award the following relief:

a. Back pay, front pay, and lost benefits, with pre- and post-judgment interest;

b. Compensatory damages for emotional distress, humiliation, and other non-pecuniary losses;

c. Punitive damages;

d. Reinstatement or, in the alternative, front pay in lieu of reinstatement;

e. Injunctive relief prohibiting Defendant from engaging in future discrimination, harassment, and retaliation based on race or color;

f. A neutral or positive letter of reference;

g. Reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; h. Such other and further relief as the Court deems just and proper.

DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable as of right.

Dated: August 20, 2026

Respectfully submitted,

By: /s/ Alexis Mena-Glasgow
Alexis Mena-Glasgow, Esq.
Florida Bar No. 117839
Simpson & Mena, P.A.

2250 SW 3rd Avenue
Suite 501
Miami, Florida 33129
Telephone: (305) 912-7665
Email: alexis@simpsonmenalaw.com